NEW SEABURY CORPORATION *vs.* BOARD OF APPEALS OF MASHPEE & others;[1] FRANK FANTASIA & others,[2] interveners. No. 88-P-1178. March 1, 1990. *Zoning,* Board of appeals: decision; By-law; Cluster development; Special permit.

The essential facts are undisputed and may be stated briefly. The plaintiff, as owner of a 1240 acre tract of land in the town of Mashpee, was properly granted a special permit in 1964 by the board of appeals (board) to develop the property according to cluster zoning principles.[3] See G. L. c. 40A, § 9. The permit was granted under the provisions of § F.V. of the Mashpee zoning by-law, which then provided, in pertinent part:

> "(1) If a plan of land, containing 100 or more acres in a single parcel or contiguous parcels (disregarding streets, public or private easements, and creeks or other natural barriers) of which not less than 60 acres is registered land, is submitted to the Board of Appeals . . . ; if the Board finds that development of the land . . . will fulfill the spirit and intent of this By-law without substantial detriment to the public good; and if a portion of the registered land, sufficient to constitute a dominant tenement, is deeded to the Town of Mashpee by a deed which states that the land thereby conveyed is benefited by restrictions imposed thereby upon all of the land shown on such plan, which restrictions: (i) *run, with respect to their burden, with all of the land shown on such plan;* (ii) are noted on or in the certificate or certificates of title to the registered portions of such

---

[1] The building inspector and assistant building inspector of Mashpee.
[2] Bernice Minkin and Solomon Minkin.
[3] The term special permit includes the decision of the board of appeals, § F.V. of the zoning by-law, under which the special permit was granted, and the deed of the dominant estate from the plaintiff to the town of Mashpee. Each of these documents contains provisions bearing on the extent and the exercise of the plaintiff's development rights and burdens.

land; (iii) *have a stated duration of not less than the maximum period [thirty years]* permitted by Section 27 of Chapter 184 of the General Laws of the Commonwealth of Massachusetts; (iv) contain the provisions for extension described in said section; and (v) have the effect, when considered in the aggregate of —

(a) Permitting no more than three dwelling units times the number of acres of registered land, and

(b) Permitting no more than 870 square feet of area . . . times the number of acres of registered land to be devoted to commercial uses . . .

"THEN, all other provisions of this Section F, including but not limited to prohibitions on use and minimum lot size and frontage requirements shall not be applicable to the registered land *so long as such restrictions are enforceable* . . . " (emphasis supplied).

The plaintiff complied in all respects with the by-law requirements and appropriated the entire tract for the purposes allowed by the permit. The only restrictions imposed on development were those relating to density and those were effective for a period of thirty years from July 13, 1964. See G. L. c. 184, § 27(*b*). The property was divided into twenty-nine sections, each with a maximum allowable number of dwelling units and square feet of commercial area. The plan showing the sections, which the board approved, did not delineate lots or roads.

This case involves section 19, where seventy dwelling units were allowed under the terms of the special permit. In 1967, the planning board of Mashpee approved a definitive subdivision plan submitted by the plaintiff for section 19 showing sixty-one lots. Four of those vacant lots were sold by the plaintiff between 1971 and 1976. Revision in the development scheme led the plaintiff to repurchase these unimproved lots in 1983. In April, 1985, the planning board made an "approval not required" endorsement on a plan submitted by the plaintiff creating eight lots from the four, thus bringing the total dwelling lots in section 19 to sixty-five of the seventy allowed under the special permit. In August, 1985, building permits were issued for a dwelling, garage and pool on each of the eight lots.[4] From the refusal of the building inspector and the assistant building inspector to revoke the building permits, the defendants, Fantasia and the Minkins, owners of lots in section 19, appealed to the board.

After hearing, the board directed the building inspector to rescind the building permits, as "the lots do not comply with the [current] requirements of the zoning by-law." In support, the board concluded:

"The Board finds that the sale by [the plaintiff] terminated its right to further develop the lots as the sale constituted an end to the development

---

[4]Shortly thereafter, all eight lots were placed under purchase and sale agreements and construction commenced.

plan contemplated and approved by the Special Permit. After the holder of the permit created the plan of development and sold the lots pursuant to this plan, any further rights to re-develop or alter the scheme of development would require additional Board of Appeal[s] action.

"The reacquisition by [the plaintiff] of the lots did not confer power to again exercise the development rights under the original Special Permit."

On the plaintiff's appeal, a judge of the Superior Court concluded that the plaintiff "exercised" its right under the 1964 cluster zoning special permit as to section 19 when it submitted, in 1967, a definitive subdivision plan showing sixty-one lots. Consequently, the judge ruled, when the plaintiff sold the four lots pursuant to the plan layout, any further rights to redevelop or alter the subdivision scheme required board action. A contrary conclusion, the judge reasoned, would "subvert the intention of the special permit and by-law, and run contrary to cluster zoning principles." Accordingly, a judgment entered sustaining the decision of the board.

Cleared of considerable underbrush and semantic tussle, this case presents a narrow question: whether the sale of vacant lots shown on an approved definitive subdivision plan of property governed by a cluster zoning development special permit results in a final "exercise" of rights under the special permit, so as to preclude redevelopment under the permit on reacquisition of the unimproved lots by the holder of the permit. We confine our discussion to the issue thus stated.

Consistent with cluster zoning principles, see generally Anderson, American Law of Zoning 3d § 11.02 (1986), the special permit granted to the plaintiff provided development flexibility restrained only by density control and time. The permit is explicit. As long as the density restrictions are in force, no other zoning strictures apply. The density restrictions run with the land (all of the 1240 acre tract) for a period of at least thirty years, the minimum time required by the zoning by-law itself.[5]

The board did not, as it could have, see G. L. c. 40A, § 9, impose any other condition, safeguard or limitation on the time or use of the permit. In the circumstances, the plaintiff was thus constrained in the exercise of development rights under the permit only by density and time conditions. Both have been satisfied. Contrary to the board's and the judge's conclusions, the plaintiff's division of the lots in question was contemplated and permitted by the express provisions of the special permit and was fully consistent with the concept of flexibility which underlies cluster zoning. There is simply no basis in the record from which to conclude that the plaintiff's subdivision plan of 1967, coupled with the sale of lots shown on the plan, constituted an irrevocable exercise of the development rights bestowed by the special permit.

---

[5]All buyers of land from the plaintiff had record notice of the restrictions. In addition, they had notice that layout and design could be changed at the discretion of the plaintiff.

The judgment is reversed, and a new judgment is to be entered annulling the decision of the board as in excess of its authority.

*So ordered.*

*Robert B. Tolins* (*Myron J. Fox* with him) for the plaintiff.

*Jonathan D. Fitch* for Frank Fantasia & others.

*Leslie-Ann Morse*, Assistant Town Counsel (*Joseph J. Reardon*, Town Counsel, with her ) for Board of Appeals of Mashpee & others.